UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**UNITED STATES OF AMERICA**

        Plaintiff

vs.                                    Civil No.

**PROPERTY SEIZED FROM
EDUARDO LUIS REQUEJO-CHAVEZ
AND JORGE LUIS ALMANZA-RIVERO**

        Defendant
_____/

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

COMES NOW the United States of America, Plaintiff in this action, by and through the undersigned Assistant United States Attorney, and alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

2. This Court has in rem jurisdiction over the defendant properties pursuant to:

   a. 28 U.S.C. § 1355(b)(1)(A), because pertinent acts or omissions giving rise to the forfeiture occurred in the Northern District of Florida; and

   b. 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Northern District of Florida pursuant to 28 U.S.C. § 1395.

3. Venue lies within the Northern District of Florida pursuant to 28 U.S.C. § 1395(a), because the action occurred within the Northern District of Florida.

4. The defendant property is:

   a. 1998 Freightliner semi-tractor truck, VIN 1FUOCSZB8WL913191

   b. 1994 Great Dane trailer, VIN 1GRAA9627RW013116

5. The defendant property was seized by the Drug Enforcement Administration October 12, 2008.

6. The defendant property constitutes a conveyance which was used, in intended to be used, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of property described in 21 U.S.C. §§ 881 (a)(1), (2) or (9), and is therefore forfeitable pursuant to 21 U.S.C. § 881(a)(4).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in Exhibit A, which is attached hereto and fully incorporated within this Complaint by reference.

WHEREFORE, the United States of America respectfully requests that process of forfeiture be issued against the defendant property, that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed, that the Court decree the condemnation and forfeiture of the property to the United States for disposition according to law and that the United States be granted such other relief as the Court deems just and proper.

Respectfully submitted this ___ day of April, 2009.

                            THOMAS F. KIRWIN
                            United States Attorney

                            _____
                            E. BRYAN WILSON
                            Assistant United States Attorney
                            Florida Bar No. 604501
                            111 North Adams Street, 4th Floor
                            Tallahassee, FL 32301
                            (850) 942-8430

## DECLARATION

I am a Special Agent employed by the Florida Department of Law Enforcement, currently assigned as a Task Force Officer to the Panama City, Florida, Resident Office of the Drug Enforcement Administration.

I have read the contents of the foregoing Complaint for forfeiture, and the Exhibit thereto, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of April, 2009.

**H. MICHAEL BETTIS**
Special Agent, FDLE
Task Force Officer, DEA

The foregoing affidavit was sworn before me this 24th day of April, 2009, by Task Force Officer H. Michael Bettis, who is (personally known to me) or has produced _____ as identification.



FRANKIE L. BURGESS
Commission # DD 871373
Expires March 17, 2013
Bonded Thru Troy Fain Insurance 800-385-7019

Notary Public

## AFFIDAVIT IN SUPPORT OF FORFEITURE

I, H. Michael Bettis, being duly sworn in a manner provided by law, depose and state:

1. I am a Special Agent of the Florida Department of Law Enforcement and have been employed as a Special Agent for approximately 25 years. I am a sworn Task Force Officer currently assigned to the Panama City, Florida, Resident Office of the Drug Enforcement Administration. During the course of my law enforcement career, I have written, executed, and assisted in numerous federal and state search warrants for narcotics, dangerous drugs, records of illegal narcotics trafficking, and proceeds related to illegal narcotics trafficking. I have testified in federal court on numerous occasions regarding the manufacture, sale, and distribution of narcotics. I have also testified concerning the methods used by illegal narcotic traffickers to conceal their assets.

2. This affidavit is in support of the forfeiture of a 1998 Freightliner semi-tractor truck, VIN 1FUOCSZB8WL913191 and a 1994 Great Dane trailer, VIN 1GRAA9627RW013116 seized from Eduardo Luis Requejo-Chavez and Jorge Luis Almanza-Rivero on October 12, 2008.

3. On October 12, 2008, at approximately 7:12 p.m., in DeFuniak Springs, Walton County, Florida, located in the Northern District of Florida, Florida Department of Transportation Officer Michael Howell conducted a traffic stop on a 1998 Freightliner semi-tractor truck, VIN 1FUOCSZB8WL913191, which was pulling a 1994 Great Dane trailer, VIN 1GRAA9627RW013116, for the purpose of conducting a commercial motor vehicle inspection per Florida State Statute 316.302(8). Officer Howell approached the vehicle, checking for any hazards or safety violations, and noticed that the drain holes under the front of the trailer had been filled with foam insulation. Based on Officer Howell's training and experience, such action is suspicious in that such action prevents the trailer from draining the moisture build-up from inside the trailer and can result in the trailer being overweight at weigh stations. Howell made contact with the driver, who was identified as Eduardo Luis Requejo-Chavez. Officer Howell identified himself as a

Department of Transportation officer and explained why he had stopped the vehicle. Officer Howell then asked Requejo-Chavez if he had any passengers and Requejo-Chavez advised that he had no passengers. Officer Howell requested that Requejo-Chavez provide all his required paperwork (driver's license, registrations for the truck and trailer, medical card, shipping papers, and log book) for a commercial motor vehicle inspection. Requejo-Chavez collected all the required documents and complied.

4. Requejo-Chavez's documents reflected that he had been in the sleeper berth in one city and had resumed driving again in a different city. When questioned about this, Requejo-Chavez then stated that he had a co-driver. Officer Howell requested that he provide him with his co-driver's driver's license, log book, and medical card. Requejo-Chavez returned to the truck and woke up the co-driver. Requejo-Chavez and Jorge Luis Almanza, the co-driver, returned to Officer Howell's patrol vehicle without the co-driver's paperwork. Officer Howell then requested that Almanza retrieve his documents and return to his patrol vehicle. While inspecting the co-driver's log book, Officer Howell discovered the co-driver was showing driving while he was occupying the sleeper berth, in violation of CFR49 395.8(f)(1).

5. The shipping papers provided by Requejo-Chavez indicated the following: the load consisted of two pallets of Perrier Water, two pallets of Sprite, four pallets of Coca Cola, and four pallets of Zephyrhills Water; the load was picked up at 12:00 a.m. (local time) in McAllen, Texas, at HEB Foods at 9005 10th Street and was to be delivered to Senands Super Market at 15475 SW 857 Miami, Florida, 33193; the shipper seal number was 5264665. Requejo-Chavez could not explain why he was transporting Zephyrhills Water from McAllen, Texas, to Miami, Florida, when Zephyrhills Water is produced in Florida. Also the seal number on the cargo door of the trailer (A899100) did not match the seal number on the shipping papers (5264665). Officer Howell then requested consent to search the vehicle from Requejo who verbally consented. Officer Howell also requested consent to search from the co-driver (Almanza) who verbally consented.

6. Officer Howell requested both subjects step aside while he deployed canine Max, a certified narcotics detector canine. The drug dog alerted on the driver's door and on the rear doors of the trailer. The seal on the cargo door was removed and the trailer was searched. Officer Howell opened the rear doors of the semi trailer and saw 12 pallets of various beverages including Perrier Water, Zephyrhills Water, Sprite, and Coca-Cola. In the front driver side corner of the trailer was a broom with a roll of clear plastic wrap on the broom handle. This same clear plastic wrap was used to wrap the pallets. There were five pallets of Coca-Cola and, according to the shipping papers, only four should have been Coca-Cola. Officer Howell started searching the pallets of Coca Cola and discovered several gray duct tape bundles. Officer Howell then exited the trailer and secured both subjects with handcuffs and received assistance in transporting the prisoners and driving the truck with trailer to a location where the load was removed from the trailer one pallet at a time and a search conducted of each pallet. 150 gray duct tape bundles containing cocaine were discovered in three of the pallets containing Coca-Cola. A field test was conducted which was positive for cocaine.

7. While searching the tractor, Howell discovered $3,000.00 in one thousand-dollar bundles in "street folds" over the driver's compartment. Officer Howell exited the tractor and returned to Requejo-Chavez and requested that Requejo-Chavez read the "Miranda Warnings" in Spanish from Officer Howell's Florida Department of Transportation Motor Carrier Compliance Miranda card. Requejo-Chavez completed reading the card and Howell asked him in Spanish if he understood. Requejo-Chavez replied "Comprendo," and, at that point, Requejo-Chavez stopped speaking English and only spoke Spanish. Prior to that time, Officer Howell had communicated very easily in English with both Requejo-Chavez and Almanza.

8. On October 12, 2008, at approximately 11:05 p.m., I witnessed DEA Special Agent Scott A. Nagle read Jorge Almanza his Miranda rights in Spanish. Almanza signed a waiver of rights and agreed to answer questions.

9. Almanza stated that on October 10, 2008, Requejo-Chavez called and asked if Almanza wanted to be a tractor-trailer co-driver for a cargo load from McAllen, Texas, to Miami, Florida. Almanza stated he and Requejo-Chavez were lifelong friends who had known each other in Cuba prior to arriving in the United States. Almanza agreed as he had no job and needed money. On the same day, Requejo-Chavez and Almanza left the Miami area and drove to McAllen. Almanza stated he believed the trailer contained cargo due to the feel and sounds of the trailer prior to leaving Miami. Almanza did not know the type of cargo the trailer contained.

10. Almanza stated he and Requejo-Chavez drove straight to McAllen and arrived at a warehouse between approximately 11:00 p.m. and 12:00 a.m. on October 11, 2008. Almanza was sleeping in the truck while Requejo-Chavez drove as the truck arrived at the warehouse. Almanza continued to sleep lightly and relax in the truck while the truck was being loaded at the warehouse.

11. Almanza stated that after departing the warehouse and starting the drive back to Miami, Requejo-Chavez told Almanza that the cargo contained cocaine. Almanza did not object to the presence of the cocaine as Almanza needed the money. Almanza did not know how much cocaine was in the trailer but knew that it was a large amount. Requejo-Chavez did not tell Almanza how much pay Almanza was going to earn nor had Almanza been given any money at that point.

12. Almanza stated he and Requejo-Chavez maintained contact with the owner of the cocaine, who Almanza knew to be a Hispanic male with the nickname of "Loco" or "El Loco," which is Spanish for crazy or the crazy one. Almanza stated "Loco" spoke with a mixture of a Cuban and Mexican accent. Almanza had never been introduced to "Loco" and Almanza stated it was the first time he (Almanza) transported drugs.

13. Almanza stated Requejo-Chavez had brought a "Boost" prepaid cellular telephone from Miami and Requejo-Chavez and Almanza maintained contact with "Loco" through a direct connect call. Almanza stated that about every half-hour or longer, Almanza or

Requejo-Chavez would call "Loco" or answer a direct connect call from "Loco" regarding the cocaine. The calls consisted of "Loco" asking how things were going (referring to any problems transporting the cocaine) and Almanza or Requejo-Chavez would respond that things were fine.

14. Almanza stated the cocaine was to be delivered to the Miami area and upon approaching the area, "Loco" would tell Almanza and Requejo-Chavez where exactly the cocaine was to be delivered. Almanza had no additional information and the interview was terminated.

15. On October 12, 2008, at approximately 11:30 p.m., I witnessed Special Agent Scott A. Nagle read Eduardo Luis Requejo-Chavez his Miranda rights in Spanish. Requejo-Chavez invoked his right to consult with an attorney prior to questioning and the interview was terminated.

16. On October 23, 2008, while preparing for the trial in a separate investigation of Orestes Cabrera, I and Okaloosa County Sheriff's Office Investigator Al McDonough were assisting Assistant United States Attorney Tiffany Eggers interview cooperating co-defendant Willie Whaley. Whaley advised that he had heard that a subject he knew as "Highway Eddie" had been arrested with a large load of cocaine. I determined that Whaley was referring to Requejo-Chavez.

17. On October 24, 2008, Task Force Officer Michael Bettis showed Whaley a photo array containing a photo of Requejo-Chavez and five other subjects. Whaley identified the photograph of Requejo-Chavez as a subject who he knew as "Highway Eddie." Whaley advised that he had previously obtained a kilogram of cocaine from Requejo-Chavez in early 2008.

18. Based on all the facts above, I have probable cause to believe and do believe that the 1998 Freightliner semi-tractor truck, VIN 1FUOCSZB8WL913191, 1994 Great Dane trailer, VIN 1GRAA9627RW013116 and the $3,000 in United States Currency seized from the Eduardo Luis Requejo-Chavez and Jorge Luis Almanza-Rivero on October 12,

2008, was used to facilitate a drug trafficking offense in violation of Title 21, United States Code, Section 841, thereby making the vehicle and currency forfeitable under Title 21, United States Code, Section 881(a)(4).

*H. Michael Bettis*
H. Michael Bettis
Task Force Officer, DEA